IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANTZ T. EXCELLENT,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **THE BRYN MAWR TRUST COMPANY,** | : | No. 21-3632 |
| Defendant. | : | |

### ORDER-MEMORANDUM

**Schiller, J.**                                                                                                                     **October 27, 2022**

**AND NOW**, this **27th** day of **October 2022**, upon consideration of the Motion to Dismiss by Defendant The Bryn Mawr Trust Company (ECF 8) and Motion for Sanctions by Plaintiff Frantz T. Excellent (ECF 9) it is **ORDERED**:

1. Defendant's Motion to Dismiss is **DENIED**; and

2. Plaintiff's Motion for Sanctions is **DENIED**.

1

*Analysis*

Plaintiff Frantz T. Excellent, an African American man, began working as a manager of The Bryn Mawr Trust Company's (the "Bank") Media, Pennsylvania branch in August 2018. The Bank fired him just over a year later on September 23, 2019. He now sues the Bank for race discrimination and retaliation under 42 U.S.C. § 1981. The Bank moves to dismiss Excellent's Complaint for failure to state a claim pursuant to Federal Rule 12(b)(6). It argues Excellent's claims are an attempt "piggyback" on six other suits against the Bank. (ECF 8-1 at 2.) In response, Excellent asks for sanctions against the Bank under Federal Rule of Civil Procedure 11 seeking to recover the costs and fees associated with responding to the Bank's motion to dismiss. (ECF 9 at 2, 17.) For the reasons that follow, the Court will deny both the Bank's motion to dismiss and Excellent's request for sanction.

In deciding the Bank's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded allegations in the Complaint and make all reasonable inferences in favor of Excellent. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021). A well-pleaded complaint "require[s] only a short and plain statement of the claim showing that the pleader is entitled to relief" and need not contain "detailed factual allegations." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-34 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To survive the Bank's motion, Excellent must allege enough factual matter, taken as true, to suggest the required elements of the his claims and raise a reasonable expectation that discovery will reveal evidence of these elements.

*Id.*; *see also Oakwood Lab'ys*, 999 F.3d at 904. In turn, the Court must "draw on its judicial experience and common sense" to find, at minimum, "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

To determine the sufficiency of Excellent's Complaint, the Court may also look to exhibits that are attached to and relied upon in it as well as matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Excellent's Complaint cites an affidavit from Biernacki and testimony from his and McDaniel's deposition. (*See* Compl., ECF 1, ¶¶ 42, 50, 52) and the Bank's motion includes additional excerpts of Excellent's deposition. If the attachments to Excellent's Complaint contradict his allegations, the exhibits control. *Vorcheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018); *Bookard v. Ellers*, No. 21-1569, 2022 WL 609204, at *3 (M.D. Pa. Mar. 1, 2022).

The Court considers these documents "without converting the motion to dismiss into one for summary judgment." *Doe v. Univ. of the Scis.*, 961 F.3d 203 (3d Cir. 2020) (quoting *In re Burlington Coat Factory*, 114 F.3d at 1426) (internal quotations omitted); *see also Kulwicki v. Dawson*, 969 F.2d 1454, 1463 n.11 (3d Cir. 1992); *Enigwe v. U.S. Airways*, 438 F. App'x 80, 81-83 (3d Cir. 2011).

### Excellent's Claims

Section 1981 ensures all persons living in the United States shall have the "same right . . . to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Claims under section 1981, like Title VII claims, are analyzed pursuant to the *McDonnell Douglas* burden-shifting framework. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009); *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).

3

1. **Disparate Treatment**

Excellent has pleaded sufficient facts to state a claim for disparate treatment. To do so, he must plead facts showing (1) he is a member of a protected class; (2) he was qualified for the position he sought to retain; (3) he suffered from an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *Morton v. Arnold*, 618 F. App'x 136, 141 n.6 (3d Cir. 2015).

The Bank does not dispute that Excellent is a member of a protected class and was qualified for his managerial position. Nor does it dispute that Excellent's termination was an adverse employment action. The question is whether Excellent has alleged sufficient facts to show circumstances giving rise to an inference of discrimination. At this stage of the case, he has.

Taken as true, Biernacki's purported preoccupation with the performance of African American employees, comments at the July 17, 2018 Newtown Square meeting where she said "I know, I can look at someone and know exactly what kind of person they are just by looking at them for the first time," and her inconsistent feedback to Excellent on his performance reports all support an inference of discrimination. (ECF 1 ¶¶ 11, 12, 17, 30, 31, 32.) The Bank argues that Excellent's Complaint should be dismissed because some of his deposition statements contradict his allegations. (ECF 8-1 at 5-12.) While his testimony may undercut the severity of the discrimination Excellent alleges he experienced, it does not squarely contradict his allegations.[1]

---

[1] The Bank points to Excellent's testimony that he (i) was, in fact, late on his first day of work, (ii) never heard Biernacki make any "derogatory comments" about McDaniel, and (iii) once prepared a statement for the Bank saying he never witnessed any "race-based harassment by Biernacki," among others (ECF 8-5, Excellent Dep. 309-311.) But these statements do not contradict Excellent's allegations. First, Excellent alleges he arrived at 8:31 AM on his first day and Biernacki verbally rebuked him and none of this other white colleagues. Second, although Excellent states he never heard Biernacki say anything "derogatory" about McDaniel, he can still use other information to support an inference of discrimination absent direct evidence of

4

## 2. Hostile Work Environment

Excellent has pleaded sufficient facts to state a hostile work environment claim. To withstand dismissal, he must show that (1) he "suffered intentional discrimination because of his[ ] [race];" (2) "the discrimination was severe or pervasive;" (3) "the discrimination detrimentally affected [Excellent];" (4) "the discrimination would detrimentally affect a reasonable person in like circumstances;" and (5) the Bank was responsible for the discrimination. *Castleberry*, 863 F.3d at 263. "An unpleasant work environment is not a good thing, but it is not necessarily actionable, either." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016). When determining whether conduct is severe or pervasive, the Court considers the frequency of the alleged discriminatory conduct, its severity, whether it was physically intimidating or harmful, and if it was merely an offensive utterance. *Id.*

Excellent alleges that Biernacki took many discriminatory actions against him, such as: (i) her criticism of his tardiness on his first day when she did not criticize his white coworkers, (ii) her repeated request that other employees monitor and report on the activities of McDaniel, Excellent, and other African American employees, (iii) her failure to treat him like a leader, (iv) her comment that she has "eyes everywhere," (v) the poor performance reports she gave him in December 2018 and July 2019, (vi) her misrepresentation about a dissatisfied Bank customer and his wife, (vii) her criticism of his performance report of McDaniel, and (vii) her July 17, 2019 comments in the Newtown Square office. (ECF 1 ¶¶ 9-13, 17-18, 21, 30-31.)

He also alleges other events, including human resources employee Marandola-Tincu's reprimand for suggesting he meet with Biernacki and McDaniel, Biernacki's attempt to prevent

---

discrimination. Third, Excellent explains in his deposition that he did not believe he witnessed any "race-based harassment" at the time he prepared the statement—not after.

McDaniel from receiving payment for originating business, the resignation of Hispanic Ardmore branch manager Betty Silfa following Biernacki's remarks at the Newtown Branch office, and the resignation of long-time Media branch employee Zarouhi "Zee" Nasir after Biernacki did not respond to her emails asking for higher paying Bank jobs. (*Id.* ¶¶ 19, 25, 34-36.)

Although any of these incidents individually would not be sufficiently severe to establish the existence of a hostile work environment, they "may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006); *Onely v. Redner's Markets, Inc.*, No. 21-4785, 2022 WL 1773606, at *4-5 (E.D. Pa. June 1, 2022); *Kamara v. Wayfair, LLC*, No. 21-1400, 2022 WL 37356, at *3 (D.N.J. Jan. 3, 2022). Taken as a whole Excellent's allegations are sufficient to permit his hostile work environment claim to withstand dismissal.

### 3. Retaliation

Excellent has pleaded sufficient facts to state a retaliation claim.. To do so, he must allege enough facts to show (1) "he engaged in [protected] activity;" (2) the Bank "took an adverse employment action against [him];" and (3) "there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Castleberry*, 863 F.3d at 266-67 (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). Protected activities include an employee's filing of formal charges of discrimination against the employer and informal protests of discriminatory employment practices such as making complaints. *Smith v. N3 Oceanic, Inc.*, 717 F. App'x 162, 165-66 (3d Cir. 2017).

The Bank argues Excellent did not engage in a protected activity when he emailed Human Resources, Saling, and Biernacki asking to meet in response to McDaniel's September 21, 2018 email decrying purported racial harassment. But even informal complaints of discrimination are

protected activities. *See Parker v. Cenlar FSB*, No. 20-2175, 2021 WL 22828, at *4 (E.D. Pa. Jan. 4, 2021) (holding that verbally complaining to superior is protected activity and denying motion to dismiss); *DeSanto v. IKEA N. Am. Servs., LLC*, No. 21-1533, 2021 WL 3562884, at *7 (E.D. Pa. Aug. 12, 2021) (holding verbally putting employer on notice of purported discrimination is protected activity and denying motion to dismiss). Therefore, Excellent's email to his superiors and Human Resources asking to meet to discuss McDaniel's concerns of racial harassment is sufficient to show he engaged in protected activity.

The Bank also argues that even if Excellent's email was protected activity, he did not properly allege a causal link. At the *prima facie* stage, "a plaintiff alleging retaliation has a lesser causal burden." *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017); *see also Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) ("[T]he *prima facie* requirement for making a [discrimination claim] is not onerous and poses a burden easily met. The *prima facie* phase of discrimination litigation merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employers treatment of a plaintiff.") (internal quotations and citation omitted). "Even if one believed it unlikely that [Excellent] can prove [facts that support causation] or will ultimately prevail on the merits," he may still state a claim if he can "set forth enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary [*prima facie*] elements" of his claims. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 793 (3d Cir. 2016) (internal quotations and citations omitted). A causal connection may be established by showing an "unusually suggestive temporal proximity" or a "pattern of antagonism coupled with timing." *Newton-Haskoor v. Coface N. Am.*, 524 F. App.'x 808, 811 (3d Cir. 2013) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)) (internal quotations omitted).

There is nothing unusually suggestive about the timing of Excellent's termination, which was about a year after he complained to Biernacki about McDaniel's treatment. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004) (holding a period of over two months was not unduly suggestive); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (three months is not unduly suggestive); *Petti v. Ocean Cnty. Bd. of Health*, 831 F. App'x 59, 64 (3d Cir. 2020) (six months is not unduly suggestive). However, Excellent set forth enough facts showing a pattern of antagonism to withstand dismissal. After emailing Biernacki and Human Resources about McDaniel's concerns, Excellent alleges Marandola-Tincu criticized him for requesting a meeting to discuss. (ECF 1 ¶ 19). When they finally had a meeting on October 25, 2018, Biernacki allegedly began drafting a "memo warning" to Excellent for "poor management performance" and told him she had "eyes everywhere." (*Id.* ¶ 21.) On December 14, 2018, Excellent alleges Biernacki gave him his first poor performance memo, which cited his purported failure to submit forms on time and inaccurate performance reviews. (*Id.* ¶ 22.) He alleges this is false. (*Id.*) He further alleges that Biernacki issued him a similarly poor performance memo on July 10, 2019 and he would not sign because he believed it was false. (*Id.* ¶ 30.) At the same meeting, he alleges Biernacki also lied about the comments of one customer and his wife. (*Id.*) Excellent also alleges that on July 17, 2019, Biernacki made comments at the Newtown Square meeting that concerned Excellent. (*Id.* ¶¶ 30-31.) Alleging these facts, Excellent has properly alleged a pattern of antagonisms that occurred after he told his superiors about McDaniel's alleged mistreatment.

### The Court will not issue sanctions

Excellent seeks an award of sanctions against the Bank under Rule 11 for the cost of the time incurred drafting his response to the Bank's motion. (*See* ECF 9 at 2). But he has not shown

he complied with Rule 11's safe harbor provision or that the Bank filed a patently frivolous motion. *See* Fed. R. Civ. P. 11(c)(2); *Ario v. Underwriting Members of Syndicate 53 at Lloyd for 1998 Year of Acct.*, 618 F.3d 277, 297 (3d Cir. 2010). "The procedural steps mandated by Rule 11(c)(2) are not meant to be technical rules, but rather serve the substantial function of giving the offending party a safe harbor within which to withdraw or correct the offending pleading." *Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 125 (3d Cir. 2012).

Since Excellent has not complied with Rule 11's safe harbor provision and has made no argument that the Bank's conduct was extraordinary or frivolous, the Court will deny his request for sanctions.

**BY THE COURT:**

**Berle M. Schiller, J.**